UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERARDO RODARTE,<br><br>                            Plaintiff,<br>      v.<br><br>SKAGIT COUNTY and JOSEPH GUTIERREZ,<br><br>                           Defendants. | No. 2:20-cv-885-BJR<br><br>ORDER ON DEFENDANTS' DISPOSITIVE MOTIONS |

Before the Court are two dispositive motions: (1) Defendant Joseph Gutierrez's motion for summary judgment (Dkt. No. 17); and (2) Defendant Skagit County's motion for judgment on the pleadings (Dkt. No. 20). Having reviewed the materials submitted by the parties, the Court: (1) Grants in part and denies in part Defendant Gutierrez's motion for summary judgment; and (2) Grants Defendant Skagit County's motion for judgment on the pleadings, with prejudice and without leave to amend. The reasons for the Court's decisions are set forth below.

**I.    Background**

This case arises from the arrest and pretrial detention of Plaintiff Gerardo Rodarte in Skagit County, Washington. On June 7, 2017, Skagit County law enforcement officers responded to an alleged domestic violence incident at Plaintiff's home. Digna Guadalupe Rodarte-Hernandez, who is Plaintiff's niece, alleged that Plaintiff had assaulted her, while

ORDER - 1

Plaintiff claimed that Ms. Rodarte-Hernandez had assaulted him.  Defendant Joseph Gutierrez, a deputy for the Skagit County Sheriff's Office, was one of the responding officers.

Plaintiff was arrested by Defendant Gutierrez.  Plaintiff alleges that Defendant Gutierrez fabricated evidence against him by: (1) falsifying statements from Plaintiff's wife, Fabiola Higareda Hernandez, about the alleged assault; and (2) assisting Plaintiff's niece in fabricating evidence to support her assault allegations.

At the time of his arrest, Plaintiff told Defendant Gutierrez that he was taking several medications, which included medication for high blood pressure.  The parties agree that Defendant Gutierrez retrieved Plaintiff's medications from his home.  However, Plaintiff alleges that Defendant Gutierrez told Plaintiff that he would not receive his medications in jail.

Defendant Gutierrez took Plaintiff to Skagit Valley Hospital, where he was treated for an injury to his thumb.  Plaintiff maintains that Defendant Gutierrez prevented Plaintiff from being examined at the hospital for a head injury that he had allegedly suffered from being struck by his niece.

Defendant Gutierrez then transported Plaintiff to the Skagit County Jail, where he was booked into custody.  Plaintiff maintains that Defendant Gutierrez said again at the jail that he would not let Plaintiff get his medications, and claims that he saw Defendant Gutierrez hide his medications at the jail.

The following day, Plaintiff alleges that he fainted in the jail and struck his head during the fall.  Plaintiff maintains that he fainted because he had not been given his medication for high blood pressure.

Plaintiff was charged by the Skagit County Prosecuting Attorney's Office with domestic violence assault and interfering with the reporting of a domestic violence crime.  The criminal

ORDER - 2

case proceeded to trial in January 2019 in Skagit County Superior Court, where Plaintiff was acquitted.

Plaintiff filed this complaint on June 8, 2020. Plaintiff brings claims for civil rights violations under 42 U.S.C. §1983 against Defendant Gutierrez and Skagit County. Plaintiff alleges that Defendants, acting in concert with one another: (1) denied or conspired to deny Plaintiff medical care in violation of his rights under the Eighth Amendment and Fourteenth Amendment; and (2) falsified or conspired to falsify evidence against Plaintiff in violation of his due process rights under the Fifth Amendment and Fourteenth Amendment.

## II.     Discussion

Both Defendants have filed dispositive motions. Defendant Gutierrez seeks summary judgment under Federal Rule of Civil Procedure 56, while Defendant Skagit County seeks judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

**A.     Defendant Gutierrez's Motion for Summary Judgment**

**1.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the Court views the evidence in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**2.     Denial of Medical Treatment Claims**

Plaintiff claims that Defendant Gutierrez caused Plaintiff to be denied medical treatment at the Skagit County Jail. Plaintiff alleges that Defendant Gutierrez prevented Plaintiff from receiving his medication after he was booked into the jail. Plaintiff further alleges that as a result

ORDER - 3

of not receiving his medication, he fainted in the jail the day after his arrest and injured his head in the fall.

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  When an inmate is incarcerated following a criminal conviction, the inmate's right to medical treatment arises from Eighth Amendment's guarantee against cruel and unusual punishment.  *Id.*  In this case, because Plaintiff was a pretrial detainee at the time of the alleged denial of medical treatment, his claims arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment.  *Id.*  However, courts often look to Eighth Amendment jurisprudence in cases where a pretrial detainee alleges the denial of medical treatment because the Eighth Amendment provides "a minimum standard of care for determining a prisoner's rights as a pretrial detainee, including the prisoner's rights to medical care."[1]  *Id.* at 668 (quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).

To maintain a claim for denial of medical treatment under Section 1983, Plaintiff must show:  (1) that he had a serious medical need; and (2) that the defendant's response to the need was deliberately indifferent.  *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006).  The Ninth Circuit has held that a pretrial detainee who alleges denial of constitutionally adequate medical care must show the following:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];

---

[1] It should be noted that the standards for evaluating claims for denial of medical treatment under the Fourteenth Amendment and the Eighth Amendment are not the same in all respects.  In particular, the Ninth Circuit has held that a Fourteenth Amendment claim for denial of medical treatment by a pretrial detainee is evaluated under an objective test to determine deliberate indifference by a government official, while an Eighth Amendment claim is evaluated under a subjective test to determine deliberate indifference.  *Id.* at 669.

ORDER - 4

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval*, 985 F.3d at 669 (quoting *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)).

Defendant Gutierrez argues that he is entitled to qualified immunity on Plaintiff's claims for denial of medical treatment. "In evaluating whether an officer is entitled to qualified immunity, courts consider (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019) "Qualified immunity applies either where there was no constitutional violation or where the constitutional violation was not clearly established." *Id.*

Defendant Gutierrez argues that he had no authority over Plaintiff's medical treatment after Plaintiff was booked into the jail, and as a result could not have violated Plaintiff's constitutional right to adequate medical treatment in jail. Defendant Gutierrez also argues that the evidence shows that jail staff was aware that Plaintiff took high blood pressure medication when he was booked into the jail.

To support his arguments, Defendant Gutierrez has offered a document indicating that when Plaintiff was booked into the Skagit County jail on June 7, 2017, Plaintiff informed jail officials that he had high blood pressure and took Lisinopril for the condition, and also informed officials that he was taking other medications. Dkt. No. 18, Ex. 4. In addition, Defendant Gutierrez has offered a "Jail Incident Report" concerning Plaintiff. The document indicates that

ORDER - 5

on the evening of June 7, 2017, "SCSO[2] brought in a male who brought medications for high blood pressure. He stated that he had not taken them for the night. I called ARNP Sue Baerg and she approved him to take all three medications he brought in: Lisinopril, Sertaline, & HCTZ." Dkt. No. 33, Ex. 1.

To support his claims, Plaintiff has offered a declaration from himself. In his declaration, Plaintiff asserts that at the time of his arrest, he asked Defendant Gutierrez to retrieve his medications from his house. Dkt. No. 37 at 2. Plaintiff states that he informed Defendant Gutierrez that he was taking medication for high blood pressure and told him that if Plaintiff did not take this medication every morning, he would "lose consciousness, pass out, and fall, oftentimes harming myself by, for example, hitting my head on something." *Id.* Plaintiff asserts that Defendant Gutierrez retrieved his medications, but said "that did not mean I was going to get it." *Id.* Plaintiff states that Defendant Gutierrez told Plaintiff "he would make sure I did not get my medication, and that he would make sure I did not get out of jail alive." *Id.*

Plaintiff further states in his declaration that:

> After arriving in jail, I asked Mr. Gutierrez to make sure the jail had my medication so I could take it in the morning. Mr. Gutierrez then told me that he already said he was not going to let me get my medication, and then watched while he hid my medication. By his actions, it was obvious to me Mr. Gutierrez was hiding the medication so I would not be able to take it, and so I would be harmed and possibly die in prison.

*Id.* at 2-3. Plaintiff also asserts in his declaration that the "next day, I fainted in Skagit County jail because I did not receive my medication, hitting my head and injuring it badly."[3] *Id.* at 3.

---

[2] Presumably, "SCSO" refers to "Skagit County Sheriff's Office."

[3] Defendant has moved to strike Plaintiff's declaration to the extent that Plaintiff asserts that failure to receive his medication was the cause of his fall. Defendant argues that "this is a medical opinion requiring medical expertise that the Plaintiff does not possess and is inadmissible pursuant to ER 702." Dkt. No. 32 at 2-3. The Court agrees that Plaintiff's statement is inadmissible to the extent Plaintiff attempts to offer a medical opinion that his fall was caused by a failure to receive his medication.

ORDER - 6

Plaintiff has also offered a handwritten document entitled "progress notes" from the jail. Dkt. No. 39, Ex. C. These notes are dated June 8, 2017, the day after Plaintiff was booked into the jail. To the extent the Court is able to discern the handwriting on these notes, they include the following entry at "1700," which presumably refers to 5:00 p.m. in the evening:

> IM while bending over to drink water had sharp pain in lower back – causing his legs to get weak – then had sharp pain in head – fell – hitting his head – also c/o chest pressure – [illegible] S Baerg ARNP notified – IM moved to grey area for observation until can be transported to hospital – ice pack [illegible] back pain - All medications given as IM said he did not received [sic] [illegible] today."

*Id.*

Defendant Gutierrez has moved to strike the "progress notes" offered by Plaintiff, arguing: (1) that it is a "hearsay document" and inadmissible under Federal Rule of Evidence 801; and (2) that the document "contains medical opinions which require medical expertise and a medical expert witness to opine about, and without such, is inadmissible pursuant to FRE 702." Dkt. No. 32 at 2. The Court declines to strike the document on these grounds. The Ninth Circuit has noted that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Here, the contents of the "progress notes" could be admitted at trial by offering the testimony of its author (although none of the parties have identified the author of the document, whose name is illegible on the notes), or through Plaintiff's own testimony to the extent the contents are within his personal knowledge. In addition, Defendant Gutierrez does not indicate what portion of the document he challenges as improper "medical opinions." To the extent Plaintiff relies on the document, the "progress notes" do not appear to include medical opinions, but simply recount Plaintiff's version of how he fell and his report that he had not received his medications on the day of his fall.

ORDER - 7

Turning to the merits, the Court concludes that summary judgment should be granted in favor of Defendant Gutierrez on Plaintiff's claims for denial of medical treatment. Plaintiff's claims are based on allegations that Defendant Gutierrez prevented Plaintiff from receiving his medications in the Skagit County jail. However, Plaintiff has offered no evidence indicating that Defendant Gutierrez had any control concerning the administration of medication to Plaintiff after he was booked into the jail on the evening of June 7, 2021. Even accepting as true Plaintiff's statement that he witnessed Defendant Gutierrez "hide" his medications at the jail and that Defendant Gutierrez told Plaintiff that he would not receive his medications in jail, the evidence does not indicate that the medication actually remained "hidden" and unavailable for jail staff to administer to Plaintiff.

Instead, the evidence indicates that jail staff were aware of and had access to Plaintiff's medication. As noted above, Defendant Gutierrez has offered evidence indicating that jail staff received permission to give Plaintiff his medications on the evening of June 7, 2021, when Plaintiff was booked into the jail. In addition, the "progress notes" offered by Plaintiff indicate that he was given his medications after he fainted in the jail the following day, which shows that jail staff had access to his medications and that they were not "hidden."[4]

Pursuant to Federal Rule of Civil Procedure 56(d)(2), Plaintiff has requested a continuance to conduct additional discovery. The Court denies this request. A party requesting a continuance under Rule 56(d) "must show (1) that they have set forth in affidavit form [or by declaration] the specific facts that they hope to elicit from further discovery, (2) that the facts

---

[4] Plaintiff also maintains that he suffered a head injury inflicted by his niece and that Defendant Gutierrez prevented this alleged injury from being examined. However, Defendant Gutierrez has pointed out that Plaintiff testified under oath at his criminal trial that Plaintiff had informed the hospital, as well as jail staff, that he had suffered a head injury. In any case, Plaintiff has not offered evidence to suggest that any alleged denial of treatment for a head injury caused him any harm.

ORDER - 8

sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."[5] *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Here, Plaintiff's counsel has offered a declaration in which he maintains that conducting discovery in this matter has been difficult due to the COVID-19 pandemic and that he was unable to depose key witnesses, including Defendant Gutierrez and Plaintiff's niece, before Defendant Gutierrez moved for summary judgment. Dkt. No. 39. However, this declaration fails to identify the specific facts that Plaintiff would hope to elicit from further discovery and does not meet the requirements for a continuance under Rule 56(d).

In addition, a continuance under Rule 56(d) may be denied if the movant has failed to conduct discovery diligently. *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002). Here, Plaintiff has not shown that he conducted discovery with diligence before Defendant Gutierrez filed his motion for summary judgment. The scheduling order in this case was issued on November 3, 2020, and set a discovery deadline of October 4, 2021. Nonetheless, it appears that Plaintiff did not seek to take depositions in this matter until August 2, 2021, the day before his response to Defendant Gutierrez's motion for summary judgment was due. Dkt. No. 32 at 11.

Therefore, the Court grants Defendant Gutierrez's motion for summary judgment on Plaintiff's claims under §1983 for denial of medical treatment. Plaintiff has offered no evidence that Defendant Gutierrez had control over the administration of medications to Plaintiff in jail, while the evidence shows that jail staff was aware of and had access to Plaintiff's medications. As a result, the Court finds that Defendant Gutierrez is entitled to qualified immunity for this

---

[5] Rule 56(d) was formerly numbered as Rule 56(f); as a result, precedent under former Rule 56(f) applies to current Rule 56(d). *Grassmueck v. Potala Village, LLC*, No. C17-0236JLR, 2018 WL 2984831, at *8 n.12 (W.D. Wash. June 14, 2018).

ORDER - 9

claim. *See Martinez*, 943 F.3d at 1270 (holding that qualified immunity applies where there was no constitutional violation by a government official).

### 3. Fabrication of Evidence Claims

Plaintiff has also brought claims that Defendant Gutierrez fabricated evidence against him. Plaintiff has offered a declaration from his wife Fabiola Higareda Hernandez in which she asserts that Defendant Gutierrez falsified information from his interview with her on the day of Plaintiff's arrest. Dkt. No. 38. Defendant Gutierrez's report from this interview states that Ms. Higareda Hernandez said that Plaintiff had assaulted his niece. Dkt. No. 18, Ex. 2 at 3-4. However, Ms. Higareda Hernandez asserts that the statements attributed to her in Defendant Gutierrez's report are false. Dkt. No. 38 at 1. She denies that she ever told Defendant Gutierrez that Plaintiff had assaulted his niece, but instead maintains that she told Defendant Gutierrez that the niece had assaulted Plaintiff. *Id.* at 1-2.

Plaintiff has also offered a declaration in which he states that the following actions took place after Defendant Gutierrez had arrested him and interviewed his wife:

> Mr. Gutierrez then drove down the street and met . . . with my niece. I heard Mr. Gutierrez state to my niece that they needed to change their story because it did not fit with the evidence, and that they had to fix it so it looked real. After some time, Mr. Gutierrez proceeded to take pictures of my niece's neck. . . . When my niece left my house earlier that day, she did not have any marks on her neck.[6]

Doc. No. 37 at 2.

"The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official." *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017). A plaintiff may prove deliberate

---

[6] In his response brief, Plaintiff also states that he witnessed the "creation and documentation of marks on the niece's neck." Dkt. No. 27 at 4. However, Plaintiff does not assert in his declaration that he actually saw the creation of marks on his niece's neck. Dkt. No. 37.

ORDER - 10

fabrication by direct or circumstantial evidence. *Caldwell v. City and County of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018). Circumstantial evidence may include evidence that the defendant continued his or her investigation of the plaintiff despite knowing that the plaintiff was innocent. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer*, 857 F.3d at 798. To establish causation, "the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Id.* To demonstrate an injury, "a §1983 plaintiff need not be convicted on the basis of fabricated evidence to have suffered a deprivation of liberty – being criminally charged is enough." *Caldwell*, 889 F.3d at 1115. There is a clearly established right not to be subjected to criminal charges based on false evidence that was deliberately fabricated by the government. *Id.*

Defendant Gutierrez argues that he is entitled to summary judgment on Plaintiff's fabrication of evidence claims because the prosecuting attorney made an independent decision to file criminal charges against Plaintiff. Defendant Gutierrez asserts that "the [f]iling of a criminal complaint immunizes investigating officers … because it is presumed that the prosecutor filing

ORDER - 11

the complaint exercised independent judgment in determining the probable cause for an accused arrest exists at that time."[7]  Dkt. No. 17 at 16.

However, the presumption that the filing of a criminal complaint immunizes an investigating officer from Section 1983 claims is rebuttable.  *Caldwell*, 889 F.3d at 1116 (noting that "[d]eliberately fabricated evidence in a prosecutor's file can rebut any presumption of prosecutorial independence.").  The Ninth Circuit has held that "if a plaintiff establishes that officers either presented false evidence to or withheld crucial information from the prosecutor, the plaintiff overcomes the presumption of prosecutorial independence and the analysis reverts back to a normal causation question."  *Id.*  Here, Plaintiff has offered evidence, through declarations from himself and from his wife, that creates a genuine issue of material fact on whether Defendant Gutierrez presented false evidence to the prosecuting attorney.  If Plaintiff's evidence were believed by a jury, it would rebut any presumption of prosecutorial independence.

The question then becomes whether Plaintiff has offered sufficient evidence to create a genuine issue of material fact on whether the alleged fabrication of evidence by Defendant Gutierrez caused an injury to Plaintiff.  *Caldwell*, 889 F.3d at 1116.  Defendant Gutierrez appears to suggest that Plaintiff cannot establish causation because the statement of Plaintiff's niece Digna Guadalupe Rodarte-Hernandez provided sufficient evidence to establish probable cause for Plaintiff's arrest.  Dkt. 32 at 5.

However, Defendant Gutierrez does not cite any case law holding that a plaintiff's Section 1983 claim for fabrication of evidence must fail if the prosecuting attorney had sufficient

---

[7] Defendant attributes this quotation to the Ninth Circuit's decision in *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).  *See* Dkt. No. 17 at 16.  However, this quotation does not appear in the *Spencer* decision, although it does appear in other Ninth Circuit decisions.  *See, e.g.*, *Caldwell*, 889 F.3d at 1115 (*quoting Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981)).

ORDER - 12

evidence, aside from the allegedly fabricated evidence, to establish probable cause for filing charges against the plaintiff.[8] Moreover, Defendant Gutierrez ignores that Plaintiff asserts in his declaration that he heard Defendant Gutierrez "state to my niece that they needed to change their story because it did not fit with the evidence, and that they had to fix it so it looked real." Dkt. No. 37 at 2. Viewing the evidence in the light most favorable to Plaintiff, this declaration creates a question of fact on whether Defendant Gutierrez assisted Plaintiff's niece in fabricating her statement and the marks on her neck. The statement of Plaintiff's niece regarding the alleged assault cannot provide justification for Plaintiff's prosecution when there is a question of fact on whether her statement was fabricated with Defendant's assistance.

Defendant Gutierrez also argues that any allegedly fabricated statements from Plaintiff's wife Fabiola Higareda Hernandez "were not utilized for determining probable cause or for initiating the arrest or prosecution of the Plaintiff." Dkt. No. 32 at 6. This argument appears to be based on the fact that the charging documents filed by the prosecuting attorney did not specifically mention Ms. Higareda Hernandez's statements. However, Defendant's report from his interview with Ms. Higareda Hernandez was completed the morning of June 8, 2017 (Dkt. No. 18, Ex. 2), and presumably his report was made available to the prosecuting attorney before the decision was made to file charges against Plaintiff on June 12, 2017. Dkt. No. 19, Ex. 3. Viewing the evidence in the light most favorable to Plaintiff, there is a question of fact as to

---

[8] Indeed, the Ninth Circuit in *Spencer* rejected a defendant's argument that the plaintiff "was required to prove that, setting aside the fabricated evidence, probable cause was lacking" for his prosecution in order to prevail on a Section 1983 fabrication of evidence claim. *Spencer*, 857 F.3d at 801. However, *Spencer* involved a plaintiff who claimed that fabricated evidence caused him to enter an *Alford* plea and serve nearly two decades in prison; under those circumstances, the court held that "[w]hether probable cause existed is entirely beside the point of that inquiry." *Id.* at 802. The court indicated that "[w]e therefore need not decide whether an instruction on probable cause would be proper in a case involving alleged damages stemming only from a prosecutor's charging decision," (*id.*), which is more akin to the situation presented here.

ORDER - 13

whether the statements of Ms. Higareda Hernandez played a role in the decision to file criminal charges against Plaintiff.

Therefore, the Court denies Defendant Gutierrez's motion for summary judgment on Plaintiff's fabrication of evidence claims. There are genuine issues of material fact on the questions of whether Defendant Gutierrez fabricated evidence against Plaintiff and whether the alleged fabrication caused injury to Plaintiff.

**4. Conspiracy Claims**

Finally, Defendant Gutierrez has moved for summary judgment on claims that he and Skagit County conspired to deprive Plaintiff of his civil rights. To prevail on a conspiracy claim under Section 1983, Plaintiff must show "an agreement or meeting of minds" by Defendants to violate his constitutional rights. *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). In addition, "[t]o state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy" and cannot rely on conclusory allegations. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). Here, Plaintiff has offered no specific facts to support the existence of a conspiracy between Defendant Gutierrez and Skagit County; indeed, Plaintiff fails to offer any response at all to Defendant Gutierrez's arguments regarding Plaintiff's conspiracy claims. As a result, the Court finds that summary judgment should be granted in favor of Defendant Gutierrez to the extent that Plaintiff's complaint alleges conspiracy claims.

**B.  Defendant Skagit County's Motion for Judgment on the Pleadings**

Defendant Skagit County has also filed a dispositive motion. The County has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

ORDER - 14

As a preliminary matter, Plaintiff argues that the County's motion should be stricken because the County filed this motion without complying with the meet and confer requirements of this Court's Standing Order for All Civil Cases ("Standing Order," Dkt. No. 2). This argument is misplaced. The Court's Standing Order does not require the parties to meet and confer before a dispositive motion is filed, with the sole exception of motions to dismiss filed pursuant to Rule 12(b). Dkt. No. 2 at 3-4. Here, the County has filed a motion pursuant to Rule 12(c), which is not subject to the Standing Order's conferral requirements.

### 1. Rule 12(c) Standards

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is "'functionally identical' to a Rule 12(b)(6) motion, [and] 'the same standard of review' applies to motions brought under either rule." *Gregg v. State of Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). When considering a 12(c) motion, a court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020). To survive a motion for judgment on the pleadings, "[t]he allegations must 'plausibly suggest an entitlement to relief.'" *Gregg*, 870 F.3d at 887 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). For a complaint to be plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. A court will not accept as true mere "legal conclusions" unsupported by fact. *Id.*

### 2. Failure to Allege Policies, Practices, or Customs of the County

Plaintiff's complaint alleges the same causes of action against Defendant Skagit County that Plaintiff has alleged against Defendant Gutierrez. Skagit County argues that Plaintiff's complaint fails to state a claim against the County because Plaintiff has not alleged that a policy, practice, or custom of the County resulted in any violations of Plaintiff's constitutional rights. The County points to the U.S. Supreme Court's decision in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), which held that a government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.

Plaintiff does not dispute that his complaint fails to allege sufficient facts to state a claim against Skagit County under *Monell*. Having reviewed Plaintiff's complaint, the Court finds that the complaint fails to state a claim upon which relief may be granted against the County because it contains no allegations that any policies, procedures, or customs of the County caused a violation of Plaintiff's civil rights. As a result, the Court finds that the County's motion for judgment on the pleadings should be granted.

### 3. Whether Leave to Amend Should Be Granted

The Court must next consider Plaintiff's request for leave to amend his complaint to attempt to state a claim against the County. Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." However, when the Court has issued a scheduling order that contains a deadline for amending pleadings, a plaintiff seeking leave to amend his or her complaint must show good cause for modifying the case schedule pursuant to Federal Rule of Civil Procedure 16(b)(4). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal

ORDER - 16

amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)' s 'good cause' standard primarily considers the diligence of the party seeking the amendment" and if the party "was not diligent, the inquiry should end." *Id.* at 609.

Here, the Court's scheduling order set a deadline of December 11, 2020 for filing amended pleadings. Plaintiff has not demonstrated that he acted with diligence in seeking leave to amend his complaint, a request that was first made nearly eight months after the scheduling order's deadline to amend pleadings. As a result, Plaintiff's request for leave to amend his complaint may be denied because Plaintiff has failed to show good cause to amend the scheduling order to permit the filing of an amended complaint. *See, e.g.*, *P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc.*, No. CV 14-09010-BRO, 2016 WL 6818758, at *4 (C.D. Cal. Aug. 10, 2016) (denying leave to amend complaint after court granted motion for judgment on the pleadings because plaintiff failed to show good cause to modify scheduling order under Rule 16(b)(4)); *Villabos v. v. Guertin*, No. CIV. S-07-2778 LKK/GGH, 2009 WL 2579041, at *5 (E.D. Cal. Aug. 19, 2009) (similar).

The Court recognizes that some district courts in the Ninth Circuit have held that in cases where a court grants a motion to dismiss or a motion for judgment on the pleadings after the deadline for amending pleadings has passed, the more liberal amendment standard of Rule 15(a) should still govern a request for leave to file an amended complaint, rather than the more stringent "good cause" standard of Rule 16(b). *See, e.g.*, *King v. Garfield County Pub. Hosp. Dist. No. 1*, No. 12-CV-0622-TOR, 2013 WL 6842534, at *4 (E.D. Wash. Dec. 27, 2013). However, even were the more liberal amendment standards of Rule 15(a) to apply here rather

ORDER - 17

than the more stringent standards of Rule 16(b), the Court finds that leave to amend should be denied.

The Ninth Circuit has noted that "liberality in granting leave to amend is subject to several limitations." *Ascon Props., Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir.1989). Limitations include "undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Cafasso ex rel. United States v. Gen'l Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).

Here, the Court finds that Plaintiff has unduly delayed his request for leave to amend his complaint. As discussed above, Plaintiff has not shown diligence in conducting discovery in this matter, and Plaintiff offers no reason why he failed to seek leave to amend his complaint until nearly eight months after the deadline for filing amended pleadings. The dispositive motions deadline and the discovery deadline in this matter have now passed, and permitting Plaintiff leave to amend his complaint at this late stage of the proceeding would require the reopening of discovery and potentially an extension of the trial date, which is scheduled for February 7, 2022.

The County also contends that any amendment to Plaintiff's complaint would be futile. The Court agrees. In his response brief, Plaintiff fails to offer any hint of what facts he could allege to state a claim against the County.[9] *See, e.g.*, *Dougherty v. City of Covina*, 654 F.3d 892, 901 (9th Cir. 2011) (affirming district court's dismissal of Section 1983 claims with prejudice and without leave to amend where plaintiff "could have identified any such fact [to state a claim] in his briefing or argument before us, but he did not."). This failure is all the more striking because,

---

[9] Local Civil Rule 15 provides that "[a] party who moves for leave to amend a pleading . . . must attach a copy of the proposed amended pleading as an exhibit to the motion or stipulation. The party must indicate on the proposed amended pleading how it differs from the pleading that it amends by bracketing or striking through the text to be deleted and underlining or highlighting the text to be added." Plaintiff has failed to comply with this requirement.

ORDER - 18

as noted above, Plaintiff had many months before filing his response brief to conduct discovery to identify facts to support his claims against the County.

Therefore, the Court denies Plaintiff's request for leave to amend his complaint. Plaintiff's claims against the County are dismissed with prejudice.

### III. Conclusion

For the foregoing reasons, the Court: (1) GRANTS IN PART and DENIES IN PART Defendant Gutierrez's motion for summary judgment (Dkt. No. 17); and (2) GRANTS Defendant Skagit County's motion for judgment on the pleadings, with prejudice and without leave to amend (Dkt. No. 20).

Dated: October 26, 2021

Barbara Jacobs Rothstein
U.S. District Court Judge